IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JUSTO TORRES GARCIA**<br>    **Plaintiff**<br><br>    v.<br><br>**COMMONWEALTH OF PUERTO RICO ET AL**<br>    **Defendants** | **Civil No. 04-1365 (SEC)** |

## MAGISTRATE-JUDGE'S REPORT AND RECOMMENDATION

Justo Torres-García ("hereafter "Torres"), an inmate housed at Guayama Annex #500 Maximum Security Unit at the Guayama Correctional Institution, Puerto Rico, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 against the Commonwealth of Puerto Rico, the Puerto Rico Department of Corrections, Bayamón Institutions Annex Nos. 292 and 501, and various individuals affiliated with the Department of Corrections (**Docket No. 1**). The essence of Torres's claim is that on March 4, 2003, he was transferred from a minimum security unit to a maximum security prison in violation of prison rules. Additionally, as a result of his being housed at a maximum security unit, Torres claims he has been derived of the right to educational programs, exercise, work programs and familial visits, all in violation of his constitutional rights.

Torres was granted leave to proceed *in forma pauperis*. At the same time Torres was ordered to provide and inform to the Court his current status and conditions of confinement; whether he was participating at educational or work programs; whether after November 2003 he received notice of any determination made by the "Comité de Quejas y Agravios"; whether any proceedings were initiated after November 2003 before the state courts, in regards to these claims, and if so, the status of said cases (**Docket No. 6**). After this Order was entered on May 13, 2005, the District Judge entered an Order advising that documents submitted in Spanish "cannot be considered by the Court" (**Docket No. 12**). To date all the documents filed by Torres remain

submitted in Spanish. In this regard, the First Circuit Court of Appeals has made it clear that "[t]he law incontrovertibly demands that federal litigation in Puerto Rico be conducted in English. *Estades-Negroni v. Associates Corp. of North Am.*, 359 F.3d 1, 2 (1st Cir. 2004) (citing 48 U.S.C. § 864 (2003). This rule applies to trials as well as to the pre-trial process. *Id.* Exhibits that have not been translated into English are not and cannot on appeal become part of the record. *Id.* (citing *United States v. Rivera-Rosario*, 300 F.3d 1, 6 (1st Cir. 2002)).

In the meantime service was effected on most, but not all, of the defendants and a Partial Motion to Dismiss was filed by Defendants Commonwealth of Puerto Rico, Miguel Pereira-Castillo, Roberto Del Valle-Navarro, and Rosana Delgado-Sevilla, (**Docket Nos. 16, 19, 20, 21, 22, 23**). Torres did not file a response to the motion. The matter was then referred for a Report and Recommendation. A review of the file indicates that contrary to normal procedure in §1983 prisoner cases, there has been no preliminary review of the complaint. Accordingly, in addition to preparing a Report and Recommendation on the Motion to Dismiss, the undersigned will also conduct an initial review of this matter.

I.      **Title 28 U.S.C. 1915A**

The undersigned now conducts a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

Title 28 U.S.C. § 1915A.

Torres alleges that on March 4, 2003, he was arbitrarily transferred from Unit 3 at Bayamón #501, a unit assigned to government witnesses, to Bayamón #292, a maximum security unit and facility. Torres alleges that the transfer was effected in disregard of institutional rules and procedures, specifically "Rule 22", as well as other applicable rules and regulations within the Commonwealth Administration of Corrections. Torres next alleges that upon his transfer to the maximum security unit in Bayamon, he was placed in segregation and was there for over three (3) months without being allowed family visits.

Torres was notified on August 20, 2003 that he would be transferred to the Guayama Annex #500, at the Guayama Correctional Institutional of Puerto Rico. He is being housed in the segregation unit due to security concerns. At the time of the filing of the complaint Torres remained housed at Guayama. He considers that this subsequent institutional transfer to Guayama was also made in violation of his rights and applicable rules and regulations. He alleges that the transfer places his life at risk, inasmuch as he allegedly served as a witness in a case that was investigated and prosecuted in the Guayama area (**Docket No. 4**, page 3). Finally, he claims that since his transfer to Guayama he has had no participation in institutional work or rehabilitation programs, and is not provided adequate recreation or exercise.

Torres seeks compensatory damages and injunctive relief in the form of a transfer to the Bayamon #501, Unit 3, where he was initially housed (**Docket No. 4**).

## II.    Exhaustion

The Prison Litigation Reform Act requires a prisoner to exhaust administrative remedies before suing over prison conditions. *Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 1821 (2001). Indeed, § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Civil No. 04-1365(SEC)											Page No. 4

The Puerto Rico Department of Corrections and Rehabilitation has adopted administrative rules and regulations for incarcerated inmates. When an inmate requests an administrative remedy he must complete and submit an Application for Administrative Remedy ("Solicitud de Remedio Administrativo") within 15 calendar days of the occurrence, said time only extended for just cause. *Reglamento del Programa de Remedios Administrativos para los Miembros de la Población Correccional*, Art. XI, §§ 1, 2. Upon submission of the request, same is assigned a number and noted. *Id*. at § 5. The inmate is also to receive a copy of the request within three working days, unless there is just cause for delay. *Id.* The evaluator who receives the request must immediately provide notice to the supervisor of the area concerned, as well as other personnel, and the evaluator is to launch an investigation. *Id.* at § 6. The evaluator provides copies of the Application to the Superintendent, the Supervisor, the Regional Coordinator, and Regional Director of the Institution where the incident occurred. *Id.* The concerned areas are to respond to the allegations within 15 working days from receiving notice. *Id.* at § 7. Once the evaluator receives the requested information he is to respond to the inmate's request and remit it within five working days of receiving the information. *Id.* at § 8. Thereafter, the inmate has 15 calendar days to appeal the decision to the Regional Coordinator. *Id.* at § 11. The Regional Coordinator has 20 working days from the filing of the appeal to render a decision. *Id.* at 12. The inmate can appeal the Regional Coordinator's decision to the Director of Programs within 15 calendar days of notification of the Regional Coordinator's decision. *Id.* at 13. The Director of Programs is to render a resolution within 30 working days, except that the time may be extended upon just cause being shown. *Id.* at 15.

Torres claims that he has administratively exhausted his claims. The record reflects that he has filed a number of administrative claims – at least six - and that as required by Corrections Rules he has received responses from the Evaluators. The case file contains two responses

addressed to plaintiff and signed by Case Evaluators "C. Virella on December 4, 2003, and December 5, 2003" which shows that Torres had been informed that he was entitled to two hours recreation each day and that he was not being denied his right to participate at institutional work and educational programs but rather had been placed in segregation in response to his request for "safety measures and/protection" and that such placement was proper while his request and case were pending evaluation.

Despite the Court's Order that Torres provide additional information regarding the status of his claims, the majority of the documents that Torres has filed in response to the Order had previously been submitted by him (**Docket No. 9**). Additionally, no documentation was provided to indicate that Torres appealed any of the evaluators' decisions to the Regional Coordinator. The documentation filed with the Court does indicate that at least as to the issue of his initial transfer from Bayamón # 501 to Bayamón #292, pursuant to "Resolucíon 22," Torres sought relief in the local courts. It is far from clear, however, as to whether Torres exhausted his administrative remedies as he is required to do, but it appears he did not. Nonetheless, even if he had, the majority of the claims he brings fail to set forth a claim upon which relief may be granted.

### III. Transfer

#### A. Transfer within the Bayamón Prison

Torres' main complaint is that on March 4, 2003, while housed at the Bayamón prison he was transferred from a minimum security unit to a maximum security unit in violation of Rule 22. Torres sought administrative relief of his transfer and in the Resolution dated June 3, 2003, the Official Examiner found that Torres had been transferred from Bayamón #501 to Bayamón #292 in violation of Rule 22. The Resolution recommended that Torres be transferred to the place of origin, that being Bayamón #501. Instead Torres was transferred to Guayama.

Civil No. 04-1365(SEC)                                                                                                          Page No. 6

The First Circuit has addressed alleged due process violations with respect to Rule 22 when there is a prison transfer and untimely post-transfer hearing. *See Maldonado-Santiago v. Velázquez-García*, 821 F.2d 822 (1st Cir. 1987). In this regard, the First Circuit found that the Disciplinary Rule 22 procedures governing emergency segregation and transfer in Puerto Rico prisons create a liberty interest protected by the due process clause of the Fourteenth Amendment.

Hence, at this stage of the proceedings it appears that Torres has set forth a due process claim on the basis of a Rule 22 violation against the Commonwealth of Puerto Rico, the Puerto Rico Department of Corrections, Bayamón Institution Annex 292 and Bayamón Institution #501. As discussed below, these defendants all fall under the umbrella of the Commonwealth of Puerto Rico and as against them, Torres may seek only injunctive relief. Also, as discussed below as to the individuals defendants, plaintiff fails to allege their personal involvement to such extent or sufficient to invoke liability.

The undersigned is mindful that the District Judge entered an Order that documents submitted in Spanish cannot be considered by the Court. Accordingly, if the Court chooses to disregard the documents submitted by Torres, all of which are in Spanish, then dismissal of this claim is appropriate. On the other hand, if at this stage the Court considers the Spanish documents, then dismissal of this claim is inappropriate.

        **B.    Transfer to Guayama**

Torres also claims that his constitutional rights were violated when he was transferred from an institution in Bayamón to another in Guayama, Puerto Rico.

It is well-settled that a prisoner has no justifiable expectation that he will be incarcerated in a particular prison. *Olim v. Wakinekona*, 461 U.S. 238 (1983). This Court knows of no Commonwealth of Puerto Rico regulation which confers a protected liberty interest in an inmate being or not being transferred between institutions within the Commonwealth Bureau of Prisons.

In fact, regardless of the existence of an applicable regulation, the Court notes that under the threshold test articulated in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293 (1995), the prison managerial decision to transfer him must present an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id.*, 115 S.Ct. at 2300. *See also, Dominique v. Weld*, 73 F.3d 1156 (1st Cir. 1996).

The Court has examined plaintiff's allegations and the numerous attachments to the Complaint and finds that the situation described or entailed by the transfer has not imposed an atypical and significant hardship in relation to the ordinary incidents of prison life.  More so, plaintiff's due process claims are meritless because he has no protected liberty interest to be housed in the institution of his choice.  Accordingly, it is **RECOMMENDED** that the claims for wrongful transfer to Bayamón #292 be **DISMISSED**.  This includes dismissal of the allegations and claims brought against defendants Rafael López, Daisy Meléndez and Manuel Rivera[1]

**IV.     Family Visits**

Torres claims that during the three months he was housed in Bayamón #292 he was not allowed familial visits.

"Freedom of association is among the rights least compatible with incarceration and some curtailment of that freedom must be expected in the prison context. *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003).  In his complaint, plaintiff alleges only that he was placed in maximum security for three months and was not allowed to see his family.  He does not allege specific facts

---

[1] Service was effected on Daisy Meléndez and Manuel Rivera, but to date they have not answered or otherwise appeared.  Service upon Warden Rafael López was returned unexecuted, inasmuch as he has retired from the Puerto Rico prison system.

indicating that this segregation involved an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. On the other hand, it is alleged that Torres' placement in a maximum security unit was prompted by his request for protection when he claimed fearing for his safety and life. Thus, the restraints imposed upon plaintiff fall well below the kind of atypical and significant hardship in relation to ordinary prison life which is necessary to invoke the procedural protections of the Due Process Clause. *See Sandin*, 515 U.S. at 490 (a court must compare the conditions in segregation with "the ordinary incidents of prison life" and then determine whether these conditions constitute an "atypical and significant hardship"). Here, any restriction upon family visits was time limited and occurred only while Torres was housed at Bayamón #292. There are no allegations that this restriction continues. Accordingly, the undersigned concludes that plaintiff's complaint fails to state a claim for violation of his rights under the Due Process Clause.

## V. Prison Conditions at Guayama

Torres brings a number of claims regarding the prison conditions in the segregation unit where he is housed at the Guayama Correctional Facility. The documents appended to the complaint indicate that Torres is being housed in segregation due to security concerns. After reviewing the complaint it is clear that fails to state a claim upon which relief may be granted regarding his allegations of unconstitutional prison conditions. More particularly, that he is being deprived of the right to work, educational/rehabilitation programs and exercise. These claims are brought specifically against José R. Cintrón-Torres, the Superintendent at Guayama Prison, José R. García-Torres, Commander of the Guards, and the Administration of the Remedial Programs.

### A. Institutional Work

Torres claims that as a result of his transfer to Guayama he has been deprived of his right to work. Prison work assignments are solely at the discretion of the prison and its officers in the exercise of the broad latitude they are afforded in the management of prisons. *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861 (1979). It is widely settled that an inmate does not have a protective property or liberty interest in continued prison employment. *James v. Quinlan*, 866 F.2d 627, 629-630 (3rd Cir. 1989). Similarly, the right to earn wages while incarcerated is a privilege, not a constitutionally guaranteed right. A state or federal law or regulation, however, may create such an interest. *Hewitt v. Helms*, 459 U.S. 460, 466, 469-472 (1983).

The First Circuit Court of Appeals has determined that "it is clear that unless state laws or regulations are to the contrary, prisoners have no vested property or liberty rights to obtain or maintain prison jobs." *Dupont v. Saunders*, 800 F.2d 8, 9 (1st Cir. 1986). It stands to reason that the applicable statutes and administrative regulations have not created any such protected property or liberty interest. *See,* 4 P.R. Laws Ann. § 1161 (Reduction in term of sentence), and § 1162 (Credit for work, study or service); *see also*, Article 4 of the Rules governing "Reductions for Good Conduct and Assiduity . . ." (describing work reductions as "discretional"). Therefore, under this rationale, Torres' claim necessarily fails, as he possesses no protected property interest in prison employment. *See, Collins v. Palczewski*, 841 F. Supp. 333 (D. Nev. 1993).

However, *Sandin*, *supra*, rejected the view that mandatory language in prison regulations are the focus when determining whether a liberty interest has been created. In the case at bar the pertinent regulations clearly describe work reductions as "discretional." *See*: Article 4 of the Rules governing "Reductions for Good Conduct and Assiduity. . ." *supra*. As a result, pursuant to *Sandin*, "[t]o establish property or liberty interest deriving from some source other than the Due Process Clause, plaintiff must either show that he has [a] 'legitimate claim of entitlement' to prison. . . employment opportunities, or that failing to have such opportunities constitutes an

'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Abdul-Akbar v. Department of Corrections*, 910 F. Supp. 986, 1002-1003 (D. Del. 1995) (citations omitted). "Given that prison rehabilitation and employment are discretionary opportunities that prison officials are not required to supply, plaintiff cannot argue that he has 'legitimate entitlement' to such opportunities or that the lack of such opportunities creates 'an atypical and significant hardship.'" *Abdul-Akbar*, 910 F. Supp. at 1003.

The undersigned finds that Torres' expectations of prison employment do not amount to a property or liberty interest entitled to constitutional protection. It is therefore **RECOMMENDED** that the claims based upon deprivation of employment be **DISMISSED**.

    **B.**    **Exercise**

Torres also complains that his right to physical exercise has been curtailed as a result of his transfer to the segregation unit. However, deprivation of outdoor exercise does not raise a constitutional issue. *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988). Additionally, limiting out-of-cell exercise to one hour per week is not unconstitutional per se. *Henderson v. Lane*, 979 F.2d 466, 469 (7th Cir. 1992); *accord Arce v. Walker*, 139 F.3d 329 (2d Cir. 1998).

Therefore, it is **RECOMMENDED** that the lack of opportunities to physical exercise claim be **DISMISSED**.

    **C.**    **Rehabilitative Programs**

Torres also complains that while being housed in the segregation unit, he has no access to educational or rehabilitation programs. However, generally, inmates have no constitutional interest in participation in a rehabilitation program. *See Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (inmate has no legitimate statutory or constitutional entitlement in eligibility for rehabilitative program sufficient to invoke due process when eligibility decision is discretionary with prison officials (*Bowring v. Godwin*, 551 F.2d 44, 48 n. 2 (4th Cir. 1977); *Pabón v. McIntosh*,

546 F.Supp. 1328, 1339 (E.D.Pa. 1982) (the failure of prison authorities to afford inmates rehabilitative programs does not constitute cruel and unusual punishment).

Therefore, in this regard, Torres also fails to state a claim upon which relief may be granted. Therefore, it is **RECOMMENDED** that the access to educational programs claim be **DISMISSED**.

## VI. Failure to Protect

Torres also appears to attempt to allege that the defendants are failing to protect him in violation of his Eighth Amendment Right to be free from cruel and unusual punishment. It is a well settled principle that the Eighth Amendment to the Constitution protects convicted inmates from the imposition of "cruel and unusual punishments." Thus, an inmate may sue a correctional facility under the Eighth Amendment for failure to afford adequate protection from attack by other inmates. *See Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994); *Ayala-Serrano v. Lebrón-González,* 909 F.2d 8, 14 (1st Cir. 1990).

Prison officials must take reasonable measures to guarantee inmates' safety from attacks by other inmates. *See Farmer,* 511 U.S. at 833; *Giroux v. Somerset County,* 178 F.3d 28, 32 (1st Cir. 1999); *Ayala-Serrano,* 909 F.2d at 14 ("[I]t is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of other prisoners") (citations and internal quotations omitted). Nevertheless, not every injury a prisoner suffers at the hands of another prisoner is actionable. *See Farmer,* 511 U.S. at 834.

The complaint alleges that the transfer to Guayama has placed Torres' life at risk. There is no indication, however, that while at Guayama Torres has sustained any injury at the hands of other inmates or prison guards. His vague allegations of risk of harm are insufficient and fail to state a claim. Therefore, it is **RECOMMENDED** that the failure to protect claim be **DISMISSED**.

## VII. Personal Involvement

Civil No. 04-1365(SEC) Page No. 12

While plaintiff has set forth adequate allegations to state a claim for due process in relation to his internal transfer to a different Annex at the Bayamón Correctional Facility, the complaint fails to allege adequate personal involvement on behalf of most of the defendants.

When there are no allegations of personal involvement, either direct or otherwise, there is a sufficient basis for dismissal of the claims. *See Maldonado-Denis v. Castillo-Rodríguez*, 23 F.3d 576, 581-584 (1st Cir. 1994). Indeed, liability in damages can only be imposed upon officials who were involved personally in the deprivation of constitutional rights. *Pinto v. Nettleship*, 737 F.2d 130, 132 (1st Cir. 1984).

As is well established, § 1983 creates no independent substantive rights, but rather provides a cause of action by which individuals may seek money damages for governmental violations of rights protected by federal law. *See, e.g., Albright v. Oliver*, 510 U.S. 266, 271 (1994). Therefore, to state a cause of action under 42 U.S.C. § 1983 Plaintiff. must allege that: (1) the defendants acted under color of state law; and, 2) their actions deprived him of a constitutional right. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).

Additionally, since there is no *respondeat superior* liability under section 1983, *Kostka v. Hogg,* 560 F.2d 37, 40 (1st Cir. 1977), liability in damages can only be imposed upon officials who were involved personally in the deprivation of constitutional rights. *Pinto v. Nettleship,* 737 F.2d 130, 132 (1st Cir. 1984) (citations omitted). The requisite personal involvement of a prison official may be established by showing that the official knew of a prisoner's personal danger yet failed to provide protection. *Id.* Additionally, when a supervisory official is placed on actual notice of a prisoner's need for physical protection, "administrative negligence can rise to the level of deliberate indifference to or reckless disregard for that prisoner's safety." *Layne v. Vinzant,* 657 F.2d 468, 471 (1st Cir.1981) (quoting *West v. Rowe,* 448 F.Supp. 58, 60 (N.D.Ill.1978)). *See also Farmer v. Brennen,* 511 U.S. 825 (1994); *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).

Civil No. 04-1365(SEC)                                                                                              Page No. 13

The Complaint alleges that the person responsible for the violation of the proper institutional transfer procedures and his actual transfer from BayamOn #501 to Bayamón #292 is Roberto Del Valle, Superintendent (**Docket No. 1**, p. 5). He is the only person named in the Complaint. The vague allegations against him do no adequately allege his personal involvement. Indeed, it is apparent that he is a named defendant solely on the basis of his status as Prison Superintendent. Inasmuch as there is no *respondeat superior* liability under § 1983, the Complaint against him cannot lie. More so, the complaint does not contain allegations even suggesting that Del Valle was personally involved in the deprivation of Torres' constitutional rights or that he was aware of the alleged violation and disregarded it.

Although not contained in the Complaint, Torres also makes allegations against certain defendants in his "Motion Requesting an Order Pursuant to Fed.R.Civ.P. 3 and 42" (**Docket No. 4**). Said motion, however, does not contain allegations of personal involvement on behalf of defendants Miguel Pereira, María Díaz, Mrs. Delgado, Warden Rafael López, José R. Cintrón-Torres, José García-Torres, Orlando Rodríguez, and Vincent Figueroa. Indeed, the majority of these defendants are named only in Torres' claim for compensatory damages, and there is absolutely no mention of other defendants.

As to defendant Laura Guerrero-De León,[2] the complaint contains no allegations that she was involved in constitutional violations, but rather refers to a determination made by Guerrero on June 3, 2003, wherein she concluded that Torres' institutional transfer did not conform with Rule 22. Additionally, Guerrero made recommendations that Torres be transferred to his original institution. Rather than violating Torres' constitutional rights, Guerrero's actions were to remedy any such violation.

---

[2] Summons was issued for defendant Guerrero -De León, but to date she has not been served. Should this Report and Recommendation be adopted, service will be unnecessary.

Therefore, it is **RECOMMENDED** that the Motion to Dismiss on the basis of failure to state a claim (**Docket No. 16**) be **DENIED**.

### VIII. Official Capacity - Eleventh Amendment

The appearing defendants move for partial dismissal arguing that Torres is barred from obtaining monetary damages. Defendants argue that aside form the injunctive relief sought by Torres, the complaint lacks merit and all claims against the appearing defendants in their official capacity should be dismissed.

The Eleventh Amendment bars suits against states for money damages unless the state has consented. *See Metcalf & Eddy v. P.R. Aqueduct & Sewer Authority*, 991 F.2d 935, 938 (1st Cir. 1993). Suits filed against state officials in their official capacity are deemed actions against the state, regardless if the state is a named party to the suit, since the real party in interest is the State and not the official. *Hafer v. Melo*, 502 U.S. 21 (1991); *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Even when state officials act under color of state law pursuant to § 1983, the Eleventh Amendment bars monetary claims against them in their official capacity. *Medina-Pérez v. Fajardo,* 257 F.Supp.2d 467, 472 (D.P.R. 2003).

In *Ex Parte Young,* however, the Supreme Court carved out an exception to Eleventh Amendment state immunity that allows federal courts to "enjoin state officials to conform their future conduct to the requirements of federal law," *Quern v. Jordan,* 440 U.S. 332, 337 (1979); *see also Green v. Mansour,* 474 U.S. 64, 68 (1985); *Edelman v. Jordan,* 415 U.S. 651, 664 (1974). The difference between permissible and impermissible relief is "the difference between prospective relief on one hand and retrospective relief on the other." *Quern,* 440 U.S. at 337.

Based upon the foregoing, it is **RECOMMENDED** that the Motion to Dismiss as to the issue of the Eleventh Amendment, monetary damages claim and retrospective injunctive relief be **GRANTED**, and **DENIED** with respect to prospective injunctive relief.

## IX.    Conclusion

While there is no indication that plaintiff initiated this lawsuit with malicious intentions, the majority of the allegations within the complaint are suitable for summary dismissal under the *in forma pauperis* statute as the claims fail to articulate an arguable legal basis in law or fact against the defendants.

It is therefore **RECOMMENDED** that all claims in plaintiff's complaint (**Docket No. 1**) be **DISMISSED** for failure to state a claim, <u>with the exception</u> of the Due Process claim seeking injunctive relief against the Commonwealth of Puerto Rico, the Puerto Rico Department of Corrections, Bayamón Institution Annex #292 and Bayamón Institution #501.  It is further **RECOMMENDED** that the Partial Motion to Dismiss (**Docket No. 16**) be **GRANTED** as to the claims under the Eleventh Amendment and the claims for monetary damages and retrospective injunctive  relief, and **DENIED** with respect to prospective injunctive relief.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(a) of the Local Rules of Court.  Any objections to the same must be specific and must be filed with the Clerk of Court **within ten (10) days** of its receipt.  Rule 72(d), Local Rules of Court; Fed. R. Civ. P. 72(b).  Failure to timely file specific objections to the Report and Recommendation waives the right to review by the District Court, and waives the right to appeal the District Court's order.  *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980).  The parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit consideration of issues not raised before the Magistrate-Judge.  *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

**The Clerk of Court will notify petitioner Torres by mail with copy this Report and Recommendation to the following address: Guayama Correctional Complex, Anexo 500, Control A-A, Celda 09, P. O. Box 10005, Guayama, PR 00785.**

**SO RECOMMENDED**

At San Juan, Puerto Rico, on this 29th day of April, 2005.

                                                             **AIDA M. DELGADO-COLON**
                                                              **U.S. Magistrate-Judge**